**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **EE HOLDING GROUP LLC,** | Civil Action No. _____ |
| *Plaintiff,* | Complaint for Trademark Counterfeiting/Infringement, False Designation of Origin/False Endorsement, and Cybersquatting. |
| v. | |
| **ERIC-BOX,** | |
| *Defendant.* | Demand for Jury Trial. |

## COMPLAINT

Plaintiff EE Holding Group LLC ("Plaintiff") sues Eric-Box ("Defendant"), and alleges the following:

### JURISDICTION

1.     This is an action for trademark infringement in violation of 15 U.S.C. § 1114, false designation of origin and/or false endorsement in violation of 15 U.S.C. §1125(a), cybersquatting in violation of 15 U.S.C. § 1125(d), as well as common law trademark infringement and unfair competition.

2.     This Court has subject matter jurisdiction over the Lanham Act claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 (federal question) and 1338 (trademark and copyright). This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

3.     This Court has personal jurisdiction over Defendant pursuant to Federal

Rule of Civil Procedure 4(k)(2) because Plaintiff's Lanham Act claims arise under federal law and, on information and belief, Defendant is not subject to the jurisdiction of any state's court of general jurisdiction and exercising jurisdiction is consistent with the United States Constitution and laws.

4.  Alternatively, this Court has personal jurisdiction over Defendant under O.C.G.A. § 9-10-91 because Defendant, on information and belief, either transacts business within Georgia or has committed a tortious injury within Georgia caused by an act or omission outside the state and regularly does or solicits business, or engages in other persistent courses of conduct, or derives substantial revenue from goods used or consumed in Georgia.

5.  Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391.

## THE PARTIES

6.  Plaintiff EE Holding Group LLC is a Delaware limited liability company with a corporate office at 270 Lafayette St., Suite 901, New York, New York 10012.

7.  On information and belief, Defendant is a foreign entity, association, or individual located in Hong Kong with a purported address at 旺角花園街 2-16號好景商業中心1605室, HongKong, Kowloon Hong Kong SAR.

2

## FACTS COMMON TO ALL COUNTS

### I.    BACKGROUND ON PLAINTIFF AND ITS WORLD-FAMOUS BRAND.

8.    Plaintiff owns all intellectual property, including all trademark rights, of fashion designer Eric Emanuel and is the current owner of his global trademark portfolio.

9.    Eric Emanuel is an independent sportswear designer who has built his business and its vibrant community from the ground up. He gained notoriety in the fashion industry by designing custom python basketball jerseys, which were ultimately worn by such notable artists as Travis Scott, A$AP Rocky, Future, and more. Today, his sportswear collection is widely recognized for its signature EE mesh shorts (made in the USA) and ongoing sneaker and apparel collaborations with brands like adidas, Reebok, and New Era.

10.    Plaintiff owns various trademarks including ERIC EMANUEL (the "ERIC EMANUEL Mark"), EE, and a stylized EE design mark (the "EE Logo") (collectively, "Marks" or "Plaintiff's Marks"). Each of Plaintiff's Marks is valid and enforceable.

11.    Plaintiff's Marks have been used in commerce consistently since at least 2014 and Plaintiff has not abandoned any of Plaintiff's Marks.

12.    Due to the investment in and use of Plaintiff's Marks for over a decade,

3

Plaintiff's Marks have accrued substantial goodwill and serve to identify goods originating exclusively from or otherwise associated with Plaintiff and are distinctive of Plaintiff's high-quality goods and services.

13.    Plaintiff owns U.S. Trademark Registration Nos. 6721224, 7310338, 8025275, 8120847, and 8120849 for the ERIC EMANUEL Mark and EE Logo ("Plaintiff's Registrations"). Copies of certificates of registration from the U.S. Patent and Trademark Office are attached hereto as Exhibit A.

14.    Plaintiff's Registrations are prima facie evidence of the validity of Plaintiff's Marks and of registration of Plaintiff's Marks, of Plaintiff's ownership of Plaintiff's Marks, and of Plaintiff's exclusive right to use Plaintiff's Marks in commerce on or in connection with the goods specified in the registrations.

## II.    BACKGROUND ON DEFENDANT AND DEFENDANT'S PERSISENT WILLFUL INFRINGEMENT.

15.    Defendant is a longstanding, persistent, willful infringer of Plaintiff's Marks.

16.    On or about October 28, 2024, Plaintiff became aware of the domain name <eric-box.com> (the "First Infringing Domain").

17.    The First Infringing Domain hosted a website (the "First Infringing Website") advertising and offering for sale a wide variety of shorts bearing counterfeit copies of Plaintiff's registered EE Logo and/or ERIC EMANUEL Mark

("Counterfeit Goods"). Attached hereto as Exhibit B is a screenshot of the First Infringing Website captured on December 11, 2025.

18.  On or about October 29, 2024, Plaintiff submitted a trademark infringement complaint to the hosting provider (Shoplazza) for the First Infringing Website in an effort to take down the site.

19.  On or about November 4, 2024, Plaintiff received a response from Shoplazza indicating that it no longer hosted the First Infringing Website. Shoplazza identified Shopify as the new hosting provider.

20.  Accordingly, that same day, Plaintiff submitted a trademark infringement complaint to Shopify to take down the First Infringing Website.

21.  Subsequently, Plaintiff learned of a TikTok account bearing the username @eric.short and the display name "Eric-Box" (the "Eric-Box TikTok Account"). The Eric-Box TikTok Account displayed numerous videos showing and promoting Counterfeit Goods. On information and belief, the Eric-Box TikTok Account also included a link to the First Infringing Domain.

22.  Ultimately, the First Infringing Website was not timely taken down by Shopify and, on or about May 27, 2025, Plaintiff submitted another trademark infringement complaint to Shopify, still trying to take down the First Infringing Website.

23.    On or about June 3, 2025, Shopify responded to the infringement complaint and advised that it was "unable to take action as, at this time, the reported content is not hosted by Shopify." (Exhibit C.)

24.    On or about June 5, 2025, Plaintiff again investigated the hosting provider for the First Infringing Website and found that it was again identified as Shoplazza. Plaintiff then submitted another takedown request to Shoplazza.

25.    On or about June 10, 2025, Shoplazza advised that the First Infringing Website had been taken down. However, when Plaintiff checked the site, it was still online. Moreover, when Plaintiff investigated the hosting provider, it had again changed back to Shopify.

26.    Despite Plaintiff's best efforts, because of the constantly changing hosting provider for the First Infringing Website, Plaintiff was not then successful in having it taken down.

27.    On or about July 18, 2025, Plaintiff purchased three different styles of Counterfeit Goods from the First Infringing Website. The shipment originated from an unknown location in Nancheng, China and was received on or about July 31, 2025. Plaintiff confirmed the products were not authentic ERIC EMANUEL brand products.

28.    Plaintiff conducted an investigation to try to ascertain the owner of the

First Infringing Website and First Infringing Domain but was unsuccessful.

29.    On or about December 31, 2025, Plaintiff filed a Uniform Domain Name Dispute Resolution Policy ("UDRP") proceeding before the World Intellectual Property Organization Arbitration and Mediation Center against the First Infringing Domain Name.

30.    The registrant of the First Infringing Domain did not respond to the complaint and a default judgment was entered against it on February 11, 2026, granting transfer of the First Infringing Domain to Plaintiff. (Exhibit D.) The First Infringing Domain was subsequently transferred to Plaintiff and Plaintiff configured it to permanently redirect visitors via an HTTP 301 redirect to Plaintiff's official website, rendering the First Infringing Website inaccessible through the First Infringing Domain.

31.    Despite Plaintiff's victory in the UDRP proceeding, Defendant's infringement did not stop. In or around March 2026, Plaintiff discovered that the Eric-Box TikTok Account had been updated to direct users to a *different* infringing domain, <eric-box.shop> (the "Current Infringing Domain"). *See* below screenshot. The Current Infringing Domain resolves to a seemingly identical website to the First Infringing Website (the "Current Infringing Website"). (Exhibits E, F.)



32.    On or around April 1, 2026, Plaintiff purchased two different styles of Counterfeit Goods from the Current Infringing Website. The shipment originated from an unknown location in Mainland China and was received on or about April 13, 2026. Plaintiff confirmed the Counterfeit Goods are not authentic ERIC EMANUEL brand products.

33.    On information and belief, Defendant also owns, controls, and/or uses a shop.app page through which Defendant advertises, sells, and offers for sale Counterfeit Goods. (Exhibit G.) The shop.app page includes a link to the Current Infringing Domain which resolves to the Current Infringing Website. (*Id.*)

34.    The contact information on the shop.app page identifies an address in Hong Kong: 旺角花園街 2-16號好景商業中心1605室, HongKong, Kowloon Hong Kong SAR.

35.    Plaintiff sent an investigator to that address in Hong Kong. However, upon visiting the address, there was no indication whatsoever that the address is

associated with Defendant in any way.

36.    On or about April 7, 2026, Plaintiff purchased two different styles of Counterfeit Goods from the shop.app page. The shipment originated from an unknown location in Mainland China and was received on or about April 17, 2026. Plaintiff confirmed the Counterfeit Goods are not authentic ERIC EMANUEL brand products.

37.    On information and belief, Defendant also owns, controls, and/or uses an account on Lemon8 though which Defendant advertises, sells, and/or offers for sale Counterfeit Goods. (Exhibit H.) The Lemon8 account includes a link to the Current Infringing Domain which resolves to the Current Infringing Website. (*Id.*)

38.    On information and belief, Defendant has sold thousands of Counterfeit Goods to consumers in the United States resulting in substantial profits to Defendant.

39.    Based on the above, Defendant advertises, promotes, sells, and/or offers for sale Counterfeit Goods with full knowledge that they are not Plaintiff's authentic goods.

40.    As of the date of this filing, Defendant continues to advertise, promote, sell, and/or offer for sale Counterfeit Goods.

41.    Defendant is not authorized to sell, offer for sale, distribute, or advertise any goods under or in connection with any of Plaintiff's Marks nor use Plaintiff's

Marks in any manner, including as part of a domain name.

42.    Defendant's actions are persistent, willful, and in bad faith and have forced Plaintiff to bring this action in this Court to protect its valuable trademarks and brand.

## COUNT I.
## INFRINGEMENT OF A REGISTERED TRADEMARK
## IN VIOLATION OF 15 U.S.C. § 1114

43.    Paragraphs 1-42 are re-alleged and incorporated herein by reference.

44.    Defendant is using in commerce one or more reproductions, counterfeits, copies, or colorable imitations of one or more of Plaintiff's Marks in connection with the sale, offer for sale, distribution, or advertising of goods in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to the source or origin of Defendant's goods.

45.    Defendant's aforesaid actions are likely to cause damage and other irreparable injury to Plaintiff unless such actions are enjoined by this Court, Plaintiff having no adequate remedy at law.

46.    Defendant's aforesaid actions constitute an infringement of Plaintiff's rights in and to its federally registered Marks in violation of 15 U.S.C. § 1114.

47.    Defendant's aforesaid acts have been and are being committed with knowledge of Plaintiff's Marks and knowledge that such acts are likely to cause confusion, or to cause mistake, or to deceive as to the source or origin of Defendant's

goods. Defendant's acts are therefore intentional, willful, and maliciously calculated to cause confusion, to cause mistake, or to deceive. As such, this is an exceptional case.

48.    In accordance with 15 U.S.C. § 1117, Plaintiff is entitled to recover from Defendant: (1) its profits, (2) any damages sustained by Plaintiff, and (3) the costs of the instant action. Further, based on the nature of Defendant's violation of Plaintiff's trademark rights, Plaintiff is entitled to recover reasonable attorney's fees, treble damages, and/or enhanced profits.

49.    Plaintiff is further entitled to an award of three times its damages or profits from Defendant's use of a counterfeit mark, pursuant to 15 U.S.C. § 1117(b).

50.    Alternatively, Plaintiff is entitled to an award of statutory damages of not less than $1,000 or more than $2,000,000 per counterfeit mark per type of good sold or offered for sale pursuant to 15 U.S.C. § 1117(c).

51.    Plaintiff has been and will continue to be irreparably damaged by Defendant's aforesaid acts unless Defendant is permanently enjoined by this Court, Plaintiff having no adequate remedy at law.

**COUNT II.**
**FALSE DESIGNATION OF ORIGIN AND/OR FALSE ENDORSEMENT IN VIOLATION OF 15 U.S.C. § 1125(a)**

52.    Paragraphs 1-42 are re-alleged and incorporated herein by reference.

53.    Defendant is using in commerce a word, term, name, symbol, or device,

11

or a combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact on or in connection with its goods in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods or commercial activities by Plaintiff.

54.    Defendant's aforesaid acts have been and are being committed with knowledge of Plaintiff's Marks and knowledge that such acts are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods or commercial activities by Plaintiff. Defendant's acts are therefore intentional, willful, and maliciously calculated to cause confusion, to cause mistake, or to deceive. As such, this is an exceptional case.

55.    Defendant's acts constitute false designation of origin and/or false endorsement in violation of 15 U.S.C. § 1125(a).

56.    In accordance with 15 U.S.C. § 1117, Plaintiff is entitled to recover from Defendant: (1) its profits, (2) any damages sustained by Plaintiff, and (3) the costs of the instant action. Further, based on the nature of Defendant's violation of Plaintiff's trademark rights, Plaintiff is entitled to recover reasonable attorney's fees,

treble damages, and/or enhanced profits.

57.    Plaintiff has been and will continue to be irreparably damaged by Defendant's aforesaid acts unless Defendant is preliminarily and permanently enjoined by this Court, Plaintiff having no adequate remedy at law.

## COUNT III.
## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

58.    Paragraphs 1-42 are re-alleged and incorporated herein by reference.

59.    Defendant's use of one or more marks that is/are confusingly similar to one or more of Plaintiff's Marks, in connection with goods which are the same as or are competitive with Plaintiff's goods, is likely to cause confusion, to cause mistake, and to deceive as to the source or origin of its goods.

60.    Defendant is offering its goods for sale with full knowledge of Plaintiff's Marks.

61.    Defendant has promoted and offered for sale its goods in such a manner as to suggest an association, affiliation, or sponsorship with, or approval by Plaintiff, or so as to cause, or be likely to cause, confusion or mistake among purchasers as to the origin or sponsorship of Plaintiff's or Defendant's goods, all to Defendant's profit and to Plaintiff's damage.

62.    Plaintiff is entitled to recover from Defendant actual and compensatory damages in an amount to be proven at trial in addition to any other available

remedies.

63.     Defendant's aforesaid conduct constitutes infringement of Plaintiff's common law rights in and to Plaintiff's Marks and further constitutes common law unfair competition, all of which has irreparably damaged and/or will irreparably damage Plaintiff, together with its goodwill and reputation, unless Defendant is enjoined and restrained by this Court, Plaintiff having no adequate remedy at law.

## COUNT IV.
## CYBERSQUATTING IN VIOLATION OF 15 U.S.C. § 1125(d)

64.     Paragraphs 1-42 are re-alleged and incorporated herein by reference.

65.     Defendant registered, traffics in, or is using or has used a domain (the Current Infringing Domain), which is confusingly similar to one or more of Plaintiff's Marks.

66.     Plaintiff's Marks were first used as early as 2014.

67.     Defendant created the Current Infringing Domain on or about June 28, 2024, approximately a decade after Plaintiff first started using Plaintiff's Marks.

68.     Each of Plaintiff's Marks was distinctive at the time Defendant registered the Current Infringing Domain.

69.     Defendant has a bad faith intent to profit from Plaintiff's Marks.

70.     On information and belief:

a. Defendant does not have any trademark or other intellectual property

rights in the Current Infringing Domain;

b. The Current Infringing Domain does not consist of the legal name of Defendant or a name that is otherwise commonly used to identify Defendant;

c. Defendant did not make prior use of its Current Infringing Domain in connection with the bona fide offering of any goods or services;

d. Defendant does not make or made bona fide noncommercial or fair use of any of Plaintiff's Marks in a site accessible under the Current Infringing Domain;

e. Defendant intends to divert consumers from Plaintiff's actual online location to a site accessible under the Current Infringing Domain (the Current Infringing Website) that harms the goodwill represented by Plaintiff's Marks for commercial gain or with the intent to tarnish or disparage Plaintiff's Marks by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

f. Defendant intends to offer to transfer, sell, or otherwise assign the Current Infringing Domain to Plaintiff or a third party for financial gain without using or having an intent to use the Current Infringing Domain in the bona fide offering of any goods or services or has engaged in

prior conduct indicating a pattern of such conduct;

g. Defendant may have provided material and misleading false contact information when applying for the registration of the Current Infringing Domain, has intentionally failed to maintain accurate contact information, or has intentionally failed to maintain accurate contact information, or has engaged in prior conduct indicating a pattern of such conduct; and/or

h. Defendant has registered or acquired the Current Infringing Domain, which they know is identical or confusingly similar to Plaintiff's Marks that were distinctive at the time of registration of such domain name, or dilutive of famous marks that were famous at the time of registration of such domain name.

71.    In accordance with 15 U.S.C. § 1117(a), Plaintiff is entitled to recover from Defendant: (1) its profits, (2) any damages sustained by Plaintiff, and (3) the costs of the instant action. Further, based upon the nature of Defendant's violation of Plaintiff's trademark rights, Plaintiff is entitled to recover reasonable attorney's fees, treble damages, and/or enhanced profits.

72.    Alternatively, in accordance with 15 U.S.C. § 1117(d), Plaintiff is entitled to an award of statutory damages of not less than $1,000 or more than

$100,000 per domain name pursuant to 15 U.S.C. § 1117(d).

73.    In accordance with 15 U.S.C. § 1125(d)(1)(C), Plaintiff is further entitled to forfeiture or cancellation of the Current Infringing Domain or the transfer of the Current Infringing Domain to Plaintiff.

74.    Plaintiff has been and will continue to be irreparably damaged by Defendant's aforesaid acts unless Defendant is preliminarily and permanently enjoined by this Court, Plaintiff having no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for a judgment of the Court as follows:

1.    That Defendant, and those persons in active concert or participation with Defendant, be permanently enjoined and restrained from advertising, offering for sale, or selling any goods bearing, under, or in connection with Plaintiff's Marks or any other designation, trademark, or service mark that is likely to cause confusion, mistake, or deception as to the source or sponsorship of Plaintiff's or Defendant's goods, and from otherwise infringing Plaintiff's Marks;

2.    That an accounting be conducted and judgment rendered against Defendant for:

    a. all profits received by Defendant from the sale of goods bearing or sold under or in connection with Plaintiff's Marks in the United States;

17

b. all damages in an amount proven at trial from, *inter alia*, Defendant's trademark infringement, false designation of origin, and false endorsement, pursuant to 15 U.S.C. § 1117; and

c. any other actual and compensatory damages in an amount not presently known but to be computed during the pendency of this action.

3. That any damages assessed against Defendant for trademark infringement, false designation of origin, and/or false endorsement be trebled as provided by 15 U.S.C. § 1117, and any profits be enhanced as warranted;

4. Alternatively, that Plaintiff be awarded statutory damages from Defendant for its use of a counterfeit mark of no less than $1,000 and no more than $2,000,000 per mark per type of good sold;

5. That Plaintiff be awarded statutory damages of not less than $1,000 or more than $100,000 per domain name against Defendant;

6. That the Court enter an order transferring the Current Infringing Domain to Plaintiff;

7. That Defendant be directed to file with the Court and serve upon Plaintiff, no later than thirty (30) days after the issuance of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction requested in the immediately preceding

paragraphs and any other provision of this Court's Order;

8.     That Plaintiff have and recover its costs in this suit, including but not limited to reasonable attorney's fees and expenses; and

9.     That Plaintiff have such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated: June 8, 2026.

Respectfully submitted,
THE SLADKUS LAW GROUP

*s/Jason H. Cooper*
Carrie A. Hanlon
Ga. Bar No. 289725
E-mail: carrie@sladlaw.com
Jason H. Cooper
Ga. Bar No. 778884
E-mail: jason@sladlaw.com

1397 Carroll Drive
Atlanta, GA 30318
Telephone: (404) 252-0900
Facsimile: (404) 252-0970

***Attorneys for Plaintiff***
